FILED
U.S. DISTRICT COURT
**UNITED STATES DISTRICT COURT FOR THE** OF NEBRASKA
**DISTRICT OF NEBRASKA**
05 SEP 14  PM 3:49

| | |
|---|---|
| FORD MOTOR COMPANY, ) | |
|  ) | Case No. 8:03 CV 493   OFFICE OF THE CLERK |
| Plaintiff, ) | |
|  ) | |
| v. ) | FINAL JUDGMENT |
|  ) | |
| MONEY MAKERS AUTOMOTIVE ) | |
| SURPLUS, INC., MIDWEST MOTOR ) | |
| PARTS CO., and SAF AUTO PARTS, ) | |
|  ) | |
| Defendants. ) | |

Pursuant to the mediation and settlement, the parties have submitted this Final Judgment

for the court's signature.

## I.   INTRODUCTION

Plaintiff, Ford Motor Company ("Ford"), brought this action against defendants, Money

Makers Automotive Surplus, Inc., Midwest Motor Parts Co., and SAF Auto Parts ("Money

Makers") to stop the alleged unauthorized labeling of boxes and parts. Among Ford's allegations

were that Money Makers' acts constituted trademark counterfeiting, trademark infringement,

unfair competition and copyright infringement. Money Makers denied Ford's claims and filed a

counterclaim for tortious interference with business. [1]  The parties stipulate, and the court

concurs that under facts as alleged by Ford, Defendants' monetary liability is $5 million. Money

Makers consents to entry of a permanent injunction as set forth below.

## II.   FINDINGS OF FACT

For over a century, Ford has engaged in the manufacture, marketing, advertising and sale

of automobiles, including automotive parts and accessories. Ford owns many trademarks for its

automotive parts, including the FORD, BLUE OVAL, MOTORCRAFT and SPEEDING CAR

---

[1] Money Makers sought on April 11, 2005 to amend its answer and counterclaims to add a counterclaim for wrongful
seizure and affirmative defenses. Given the parties' Settlement Agreement, Money Makers' motion is denied.
Final Judgment in Word.doc

marks ("FORD Marks"). Ford owns numerous valid, incontestable federal registrations for the
FORD Marks in the United States Patent and Trademark Office.

Each Ford part bears a distinctive part number ("Ford Part Number"). The Ford Part
Numbers are recognized by the public as signifying Ford and its products. Ford also owns valid
copyright registrations for its SPEEDING CAR Design.

Ford has sold billions of dollars worth of parts bearing the FORD Marks and Ford Part
Numbers and spent many millions of dollars advertising and promoting them. As a result of
Ford's extensive sales, promotion and advertising of its parts, the FORD Marks have become
among the most famous marks in the world. Consumers have come to associate Ford Part
Numbers with Ford's parts. In addition, Ford uses a well-known structure for identifying its
parts, comprising a prefix identifying a vehicle, a base number identifying a part, and a suffix
identifying particular features of the part ("Part Number Structure"). The FORD Marks, the Ford
Part Numbers and the Part Number Structure represent an extraordinarily valuable goodwill
owned by Ford.

Ford's parts sold under the FORD Marks and Ford Part Numbers are subject to a strict
quality control program implemented by Ford and its authorized agents and licensees which
protects all aspects of Ford's parts, including their appearance, packaging and labeling. An
important aspect of Ford's quality control program is the inspection of parts returned to Ford.
Ford alleges that to insure that returned parts are not confused with original quality Ford parts,
Ford labels such parts with a "Recovered Materials" stamp to indicate that they are no longer
first quality, have not been inspected for defects by Ford's authorized agents, and are sold as is
without any warranty from Ford as to their quality. Ford alleges that once a part is designated
"Recovered Materials," Ford prohibits the resale of the part absent the "Recovered Materials"

-2-

stamp so that prospective purchasers of the part are not deceived into believing that they are original quality Ford parts, or that they are covered by a warranty.

Money Makers is engaged in the distribution of surplus automotive parts. It has purchased Ford parts that bear the "Recovered Materials" stamp from other surplus parts distributors. Ford alleges that Money Makers removes the labels bearing the "Recovered Materials" stamp and affixes new labels bearing FORD Marks and/or Ford Part Numbers to the parts and then sells these relabled parts. Ford alleges this act constitutes counterfeiting and trademark infringement because the new labels would be counterfeit and the use of the labels improperly identifying Ford's parts is likely to confuse the public. Money Makers denies engaging in any improper or unlawful activity.

In connection with this Final Judgment, the parties have entered into a separate confidential settlement agreement ("Settlement Agreement").

## III.   CONCLUSIONS OF LAW

### A.   Trademark Counterfeiting

To prove its federal counterfeiting claim, Ford must establish that: (1) Ford's marks are registered; (2) defendants used counterfeit Ford marks; and (3) defendants' conduct is likely to cause confusion or deception. *See* 15 U.S.C. § 1114.

Ford owns numerous, incontestable federal registrations for each of its FORD Marks in connection with automotive parts. This establishes Ford's exclusive right to use these marks for the parts and constitutes "conclusive evidence" of "the validity of the registered marks." 15 U.S.C. § 1115. Moreover, the FORD Marks have built up an extremely valuable goodwill as a result of Ford's billions of dollars in sales and millions of dollars in advertising, along with decades of continuous use.

-3-

Ford alleges that Money Makers removed labels bearing the "Recovered Material" stamp from parts it obtained and replaced these labels with new labels displaying the FORD Marks prior to selling the parts. "When an original mark is attached to a product in such a way as to deceive the public, the product itself becomes a 'counterfeit' just as it would if an imitation of the mark were attached. *See Westinghouse Electric Corp. v. General Circuit Breaker & Electric Supply Inc.,* 106 F.3d 894, 900 (9th Cir. 1997) *see also U.S. v. Milstein,* 401 F.3d 53, 62 (2d Cir. 2005) (upholding jury finding of criminal counterfeiting where defendant repackaged goods and removed identifying codes from them to deceive consumers into believing that he was selling the genuine article).[2] Moreover, "[t]he happenstance of having trademarks made by the owner in one's possession," as Money Makers has claimed to have, "so that one doesn't have to copy them, has no relevance to the purpose of the [Lanham Act]." *General Electric Co. v. Speicher,* 877 F.2d 531, 534 (7th Cir. 1989); *see also Westinghouse,* 106 F.3d at 900 (holding that "the distinction between using a duplication versus using an original has no relevance to the purposes of trademark law").

The Eighth Circuit Court of Appeals looks to six factors to assess the likelihood of confusion between marks: (1) the strength of the owner's mark; (2) the similarity between the owner's mark and the alleged counterfeiter's mark; (3) the degree to which the products compete with each other; (4) the alleged counterfeiter's intent to pass off its goods as those of the trademark owner; (5) incidents of actual confusion; and (6) the type of product, its costs and conditions of purchase. *See Kemp v. Bumble Bee Seafoods, Inc.,* 398 F.3d 1049, 1053 (8th Cir. 2005); *Minn. Mining and Mfg. Co. v. Rauh Rubber, Inc.,* 130 F.3d 1305, 1308 (8th Cir. 1997). "No one factor controls, and because the inquiry is inherently case-specific, different factors may

---

[2] *See U.S. v. Torkington,* 812 F.2d 1347 (11th Cir. 1987) (criminal counterfeiting statute and the Lanham Act are interpreted under the same standard).

-4-

be entitled to more weight in different cases. *Kemp*, 398 F.3d at 1054 *citing SquirtCo v. Seven-Up Co.*, 628 F.2d 1086, 1091 (8th Cir. 1980).

The FORD Marks are subject to incontestable federal registrations and are among the most famous marks in the world. *See, e.g., Ford Motor Co. v. Great Domains, Inc.*, 141 F. Supp. 2d 763, 774 (E.D. Mich. 2001); *Ford Motor Co. v. Lapertosa*, 126 F. Supp. 2d 463, 465, (E.D. Mich. 2001). The FORD Marks are therefore entitled to the widest scope of protection. *See, e.g., Kemp*, 398 F.3d at 1054 *citing SquirtCo*, 628 F.2d at 1091. Ford alleges that Money Makers used identical copies of the Ford and Motorcraft labels to re-label parts. The use of identical copies of labels bearing the famous FORD Marks "weighs heavily in favor of a finding of likelihood of confusion." *Gucci America, Inc. v. Action Activewear, Inc.*, 759 F. Supp. 1060, 1064 (S.D.N.Y. 1991) (citation omitted); *see also Westinghouse*, 106 F.3d at 900 ("[T]he public is more likely to be deceived by an original mark because it serves as a perfect imitation."). Defendants sell parts to the same consumers as Ford. "[P]otential purchasers cannot reasonably be expected to distinguish between counterfeit [product] and genuine [product] because the counterfeit [product] is manufactured so as to resemble the genuine [product]." *Microsoft Corp.*, 2003 WL 21356084 at *4.

## B.    Trademark Infringement

To prove its federal trademark infringement and unfair competition claims, Ford must establish that defendants' conduct causes a likelihood of consumer confusion. *See Rauh Rubber*, 130 F.3d at 1308. Ford's trademark infringement and unfair competition claims under Nebraska state law are essentially the same as Ford's claims under federal law. Thus, the same analysis applies to both in this case. *See Mutual of Omaha Ins. Co. v. Novak*, 648 F. Supp. 905, 909 (D. Neb. 1986), *aff'd*, 836 F.2d 397 (8th Cir. 1987). For the same reasons set forth above, Ford has shown a likelihood of confusion. *See Enesco Corp. v. Price/Costco Inc.*, 146 F.3d 1083 (9th Cir.

1998) (repackaging of plaintiff's figurines likely to cause confusion over source of any damaged

products).  Where a defendant performs an unauthorized act usually performed by the plaintiff,

and thereby deprives plaintiff of control over that act, the defendant can be liable for trademark

infringement.  *See Monsanto Co. v. Haskel Trading, Inc.,* 13 F.Supp.2d 349 (E.D.N.Y. 1998)

### C.   Unfair Competition and Infringement of Ford Part Numbers

Ford alleges that Money Makers affixed Ford Part Numbers to "Recovered Materials"

parts. Consumers associate Ford Part Numbers with Ford parts.The Ford Part Numbers are

distinctive.  There is secondary meaning in the Ford Part Numbers.  "A numbering system used

to describe a plaintiff's product is entitled to protection under § 43(a) of the Lanham Act if the

numbering system has acquired secondary meaning." *Ford Motor Co. v. B&H Supply Inc.*, 646

F. Supp. 975, 995 n.27 (D. Minn. 1986).   Ford's allegations if established would prove

likelihood of confusion.  This constitutes unfair competition and infringes Ford's common law

trademarks in the Ford Part Numbers. 15 U.S.C. § 1125; *see B&H Supply* (defendants' use of

Ford's auto part numbering system in connection with their counterfeit goods constituted unfair

competition).

### D.   Copyright Infringement

To establish liability for copyright infringement, Ford must establish that (1) it owns a

valid copyright; and (2) Money Makers copied Ford's protectible expression. *See* 17 U.S.C. §

501(a); *see* also *United Telephone Co. of Missouri v. Johnson Pub. Co., Inc.,*  855 F.2d 604, 607

(8th Cir. 1988) (citations omitted).  Ford has valid copyright registrations for its SPEEDING

CAR Design.  These certificates of registration are *prima facie* evidence of valid copyrights. *See*

17 U.S.C. § 410(c).  Money Makers admitted to making one copy of the SPEEDING CAR

Design.  Money Makers otherwise denies Ford's allegations of copyright infringement.  "A single

copy is sufficient to support a claim of copyright infringement." *Atari Games Corp. v. Nintendo of America Inc.*, 975 F.2d 832, 840-41 (9th Cir. 1992) (citations omitted).[3]

### E.    Money Makers' Tortious Interference Claim

Money Makers alleged that Ford is liable for tortious interference because Ford falsely accused Money Makers of counterfeiting.  Ford's statements are privileged under the First Amendment via the *Noerr-Pennington* doctrine, which provides absolute immunity from any liability arising out of a party's filing and maintaining a civil lawsuit.  *See, e.g., Keystone Retaining Wall Systems, Inc. v. Rockwood Retaining Walls, Inc.*, No. Civ. 00-496RHK/SRN, 2001 WL 951582 (D. Minn. Aug. 22, 2001).  Thus, all of Ford's statements about which defendants complain occurred in the course of this litigation and the *Noerr-Pennington* doctrine fully immunizes Ford from any liability.  *See, e.g., Keystone Retaining Wall Systems*, 2001 WL 951582 at *10 (holding that "the *Noerr-Pennington* doctrine protects the defendants from liability on tortious interference claim[s] to the extent that plaintiffs' claims are based upon . . . litigation activities") (citation omitted).

### IV.    DAMAGES

The parties agree that on the facts alleged by Ford the proper measure of damages for liability in this case is $5 million, which the court deems a just award.  This amount consists of a trebling of the profits enjoyed by Money Makers, Ford's attorneys' fees and costs. 15 U.S.C. § 1117; *see also H-D Michigan Inc. v. Biker's Dream Inc.*, 48 U.S.P.Q.2d 1108, 1116 (C.D. Cal. 1998) (affixing plaintiff's trademark on product not approved by the plaintiff is knowing counterfeiting even if defendant was unaware of legal name for its actions); *See Louis Vuitton S.A. v. After Dark Boutique*, 680 F.Supp. 1507 (N.D. Fla. 1988) (award of treble damages and

---

[3] *See generally* 17 U.S.C. § 106; 1 U.S.C. § 1 (1988) (stating that "words imparting the plural include the singular"); S.Rep. No. 94-473 at 58 (1975); H.R.Rep. No. 94-1476 at 61 (1976).

attorneys fees is mandatory absent showing of exceptional circumstances). Money Makers has not come forward with evidence of exceptional circumstances.

## V. MONEY MAKERS' DENIAL

This Final Judgement and the Settlement Agreement entered into by the parties effects the settlement of claims alleged by Ford, which are denied and contested by Money Makers, and nothing contained herein shall be construed as an admission by Money Makers hereto to liability of any kind. Money Makers specifically denies that it has engaged in any improper or unlawful activity and denies any and all liability. However, because of the costs of this litigation and the present financial condition of Money Makers, Money Makers does herein agree voluntarily and willfully, and with the full advice of its legal counsel, to the entry of this Final Judgment, without admitting or acknowledging the truth or falsity of any contentions as to such issues of law and fact which were or could be alleged by Ford.

WHEREFORE, IT IS HEREBY ORDERED THAT:

1. Money Makers and its officers, agents, servants, employees, and all others in active concert and participation with any of them, individually and collectively, be permanently enjoined from:

a) using, making, purchasing or applying any label bearing the Ford Marks, Ford Part Numbers, Part Number Structure or any other name, mark, number, numbering structure or trade dress that includes or is similar to the Ford Marks, Ford Part Numbers, or Part Number Structure, on or in connection with any packaging or product of any kind;

b) using, making, or purchasing any packaging bearing the Ford Marks, Ford Part Numbers, Part Number Structure or any other name, mark, number, numbering structure, or trade dress similar to the Ford Mark, Ford Part Numbers, or Part Number Structure;

c) Packaging or repackaging any Ford product;

-8-

d) replacing or defacing any Ford label on any box or part, including but not limited to removing and/or replacing any label that bears the term "Recovered Materials;"

e) selling or offering for sale any counterfeit Ford Part;

f) doing any other act or thing likely to confuse, mislead or deceive others into believing that Money Makers or its products or services, emanate from, or are connected with, sponsored by or approved by Ford or that Money Makers' parts are under warranty from Ford or otherwise first quality Ford parts;

2.      Money Makers is required, in accordance with 15 U.S.C. § 1118 and Neb. Rev. Stat. § 87-141 (2003), to deliver up to Ford for destruction all infringing goods, labels, signs, prints, packages, wrappers, receptacles, advertisements and other printed materials in their possession or control bearing the Ford Marks, Ford Part Numbers, or Part Number Structure, or any reproduction, counterfeit, copy or colorable imitation of them, as well as all plates, molds, matrices, masters, tapes, film negatives and other means of making such unauthorized reproductions, counterfeits, copies or colorable imitations of the Ford Marks, Ford Part Numbers, or Part Number Structure.

3.      Money Makers and all its agents, servants, employees or persons in active concert or participation with Money Makers, are permanently restrained and enjoined from infringing Ford's copyrights in the Speeding Car Design in accordance with 17 U.S.C. § 502.

4.      Defendants shall pay Ford the amount of $5,000,000 (five million dollars), and in exchange for warranties contained in the Settlement Agreement, Ford shall, within five (5) business days of the entry of this Final Judgment, file a Release and Satisfaction, which shall be effective as a full and final accord and satisfaction, subject to the limitations set forth in the Settlement Agreement.

-9-

5.    Money Makers' counterclaims are dismissed with prejudice.

6.    This Court shall retain jurisdiction over this matter for the purpose of enforcing

this Final Judgment and the Settlement Agreement.

**SO ORDERED AND ADJUDGED:**

Date: 9/14/05

United States District Court Judge

-10-

CONSENTED AND AGREED TO:

On behalf of Ford Motor Company

PATTISHALL, MCAULIFFE, NEWBURY
  HILLIARD & GERALDSON LLP
DAVID C. HILLIARD
JANET A. MARVEL
MATTHEW A. GRIFFIN
PHILLIP BARENGOLTS
311 S. Wacker Drive, Suite 5000
Chicago, Illinois 60606

MCGRATH NORTH MULLIN
& KRATZ, PC
JOHN P. PASSARELLI
PATRICK C. STEPHENSON
Suite 3700 First National Tower,
1601 Dodge Street
Omaha, Nebraska 68102
(402) 341-3070

Attorneys for Plaintiff,
Ford Motor Company

By: _____
    John P. Passarelli

Dated: _9-8-05_

MONEY MAKERS AUTOMOTIVE
SURPLUS, INC., MIDWEST MOTOR
PARTS CO., and SAF AUTO PARTS

By: _____
    Thomas Kawa
    Owner

Dated: _9/1/05_

-11-